**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mya Simons,<br><br>                    Plaintiff,<br><br>v.<br><br>QuikTrip Corporation,<br><br>                    Defendant. | No. CV-22-00186-TUC-SHR<br><br>**Order Re: Motion for Protective Order** |

　　　　Pending before the Court is Defendant QuikTrip Corporation's Motion for Protective Order (Doc. 26). Defendant asks the Court to order: (1) "the surveillance video (including the copy received by the City of Phoenix in response to Plaintiff's subpoena) may only be disclosed to the parties in this litigation and their attorneys of record, including the attorneys' staff and paralegals"; (2) "surveillance video (including the video produced by the City) may be used solely in the litigation of this case only"; (3) "surveillance video, including any copies or recording thereof, must be either returned to QuikTrip or destroyed at the termination of this litigation"; and (4) "if either party seeks to include a portion of the video surveillance with a document that is filed with the Court, the party will submit a motion to the Court seeking to place the surveillance under seal, given that the applicable standards are met (i.e. 'good cause' or 'compelling reasons')." (*Id.* at 2.) In response, Plaintiff argues the protective order should be denied and Defendant must produce the relevant footage because Defendant cannot meet its burden to show it will suffer any specific prejudice or harm without the protective order. (Doc. 27 at 1.) For the reasons set

forth below, that motion is granted in part and denied in part.

A party may move for a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). The Court may grant such a protective order if the proponent demonstrates good cause it is needed "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002) ("[P]arty seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted.")  "If [the] [C]ourt finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211.

Here, Defendant, as the proponent of the protective order, bears the burden of establishing good cause. Plaintiff seeks the store videos that captured the glass entrance door of Defendant's store becoming unhinged and falling on Decedent. (Doc. 27 at 1-2.) Specifically, Plaintiff seeks footage of "the front doors, entrance to the store, and immediate exterior of the store" for her negligence and wrongful-death lawsuit. (*Id.* at 6; Doc. 1-3 at 4-6.)

Defendant does not claim the multiple camera angles of the door falling are irrelevant, nor that the request itself is burdensome. (*See generally* Doc. 26.) Rather, Defendant claims it has privacy rights in the surveillance video which is designed to promote safety and prevent theft and loss. According to Defendant, "if the entirety of what is captured by the cameras is accessible to the public" they "would be specifically aware of what is and is not shown on the cameras." (Doc. 26 at 5.) Defendant is concerned the public would be able to see parts of the store "that are accessible only to employees, such as behind the cash register and in other employee-only areas." (*Id.*) Furthermore, Defendant alleges its choice of video-monitoring software and surveillance systems are confidential information that it does not share, and its disclosure would harm its competitive advantage. (*Id.* at 6-8.)

Defendant, however, broadcasts real-time video surveillance of the store on multiple monitors for the customers to see; this includes various camera angles of the store. Therefore, Defendant cannot claim privacy protection for those same videos, or for the video of the store generally to the extent it depicts Decedent, the door falling off its hinges, and Decedent's resulting injuries. Plaintiff concedes, at this time, she has no reason to believe video footage of the area behind Defendant's cash registers or employee-only areas are relevant. (Doc. 27 at 2.) The Court agrees and finds Defendant need not provide videos that do not depict Decedent, the door incident, or the aftermath with respect to Decedent. This will help ensure Defendant's videos of non-relevant footage is secure.

The Court finds the videos of the door incident would not have significant value to prospective shoplifters. Customers can already see various camera angles on the public monitors and they can freely walk around the store to observe the store's layout and cameras. The Court finds Defendant fails to sufficiently establish its choice of video-monitoring software gives rise to a competitive advantage or that its disclosure is even required to provide Plaintiff with copies of the surveillance video. Therefore, Defendant's motion for protective order in these respects is denied.

Lastly, Defendant requests the disclosed videos only be used for purposes of this litigation. At this stage, the Court cannot see why the video should be shown to others outside the context of this litigation. Therefore, to the extent Plaintiff has not received prior authorization of this Court, she shall only use the videos for purposes of this lawsuit.[1] The video footage may be disclosed to the parties in this litigation, the attorneys of record, the attorneys' staff and paralegals, during interviews or depositions with witnesses, and during any potential mediation or settlement conferences. Given the Court's resolution of the Motion, the Court need not address Defendant's request to seal.

---

[1] Defendant argues the limits of the protection order should apply to the body-camera footage recorded by the City of Phoenix Police Department. (Doc. 26 at 11-12.) While investigating the incident, the body-camera footage captured the surveillance videos of the incident. (*Id.*) Plaintiff argues any member of the public could submit a public records request from the Phoenix Police Department. (Doc. 27 at 3, 6.) Defendant has not shown a protective order is necessary with respect to footage from the City of Phoenix Police Department—a third party not involved in this lawsuit.

**IT IS ORDERED** granting Defendant's Motion (Doc. 26) in-part as follows:

(1) Defendant need only produce the unredacted videos which show the Decedent and the door incident (and reasonable periods before and after);

(2) Plaintiff shall not use the videos for purposes other than this litigation without the express authorization of this Court and shall return or destroy all videos at the termination of this litigation.

**IT IS FURTHER ORDERED** the Motion is DENIED in all other respects.

**Dated this 9th day of September, 2022.**

Honorable Scott H. Rash
United States District Judge